## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **ALLSTATE VEHICLE AND PROPERTY** | § | |
| **INSURANCE COMPANY** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 3:20-cv-261** |
| | § | |
| **MICHAEL SHAWN CUMBERLAND** | § | |
| **AND SYLVIA CUMBERLAND,** | § | |
| **INDIVIDUALLY AND AS** | § | |
| **REPRESENTATIVES OF THE ESTATE** | § | |
| **ESTATE OF NICHOLAS ANTONIO** | § | |
| **CUMBERLAND AND CONNOR** | § | |
| **JOSEPH RENNICK,** | § | |
| | § | |
| **DEFENDANTS.** | § | |

## <u>ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT</u>

TO THE HONORABLE COURT:

Plaintiff Allstate Vehicle and Property Insurance Company ("Allstate") files this its Original Complaint for Declaratory Judgment, seeking a judicial declaration that it has no duty to defend or to indemnify Defendant Connor Joseph Rennick under his parents' Allstate homeowners policy for the claims asserted against him in a pending state court lawsuit filed by Defendants Michael Shawn Cumberland and Sylvia Cumberland, Individually and as Representatives of the Estate of Nicholas Antonio Cumberland, Deceased (collectively the "Cumberlands") or to pay any policy proceeds to the Cumberlands. Allstate submits that it is entitled to this declaratory relief because the factual allegations in the current pleading filed in that state court lawsuit negate coverage based on the unambiguous exclusion in the Allstate policy eliminating liability coverage for any claim "arising out of the…use…of any

motor vehicle…"   In support of the relief requested, Allstate would respectfully show the Court the following:

<h1 style="text-align:center">I.</h1>

<h2 style="text-align:center">PARTIES</h2>

1.      Plaintiff Allstate is incorporated and has its principal place of business in Illinois.  Therefore, Allstate is a citizen of the State of Illinois for all purposes pursuant to 28 U.S.C. § 1332(c)(1) and is not a resident of Texas for purposes of determining diversity of citizenship.  Allstate is authorized to do business in Texas.

2.      Defendants the Cumberlands are residents of Harris County, Texas.   On information and belief, the Cumberlands may be served with process at 11618 Green Oaks St., Houston, Texas 77024 or wherever they may be found.  Allstate requests service on the Cumberlands personally or through their attorneys of record, W. Mark Lanier and Judson Waltman, The Lanier Law Firm, P.C., 10940 W. Sam Houston Pkwy N., Suite 100, Houston, Texas 77064, either as the Cumberlands' agent for service or, after the requisite showing, as a reasonably effective means of providing the Cumberlands' with notice of this suit.  Fed. R. Civ. P. 4(e)(1); Tex. R. Civ. P. 106*; see also Leach v. City Nat'l Bank of Laredo*, 733 S.W.2d 578, 580 (Tex. App.—San Antonio 1987, no writ).   Allstate will seek to serve the Cumberlands first through their attorneys and will request other service if counsel decline or are not authorized to accept service on their behalf.

3.      Defendant Connor Joseph Rennick is an individual dual resident of Galveston County and Travis County, Texas.  Mr. Rennick may be served with process at the address listed on his parents' homeowners policy, 3108 Patty St., Crystal Beach, Texas 77650.  Alternatively, Mr. Rennick may be served at 1002 W. 26th, Austin, Texas 78705 or wherever

he may be found.  Allstate requests service on Mr. Rennick at the Crystal Beach, Texas address and will seek other service if Allstate is unable to accomplish service at this address.

## II.
### JURISDICTION AND VENUE

4.      The Court has jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 1332 in that the suit is a civil action between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.  In the pending state court action, the Cumberlands seek monetary relief in excess of $1 million.  The liability limit under the Allstate homeowners policy is $300,000.  Courts consider such pleaded damages and policy limits when determining whether the "amount in controversy" requirement is satisfied.  *See St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (amount in controversy determination includes policy limits and potential damages).  Thus, the minimum jurisdictional limits exist in this case.

5.      There is an actual controversy between Allstate, on the one hand, and Mr. Rennick and the Cumberlands, on the other hand, for purposes of 28 U.S.C. § 2201 because of the reserved coverage dispute between Allstate and Mr. Rennick and because the Cumberlands are potential third-party beneficiaries to the Allstate liability policy.  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000); *Dairyland Ins. Co. v. Makover*, 654 F.2d 1120, 1123–25 (5th Cir. 1981).  The coverage disputes for both the duty to defend and the duty to indemnify are justiciable at this time, despite the absence of a judgment against Mr. Rennick, because the same reasons that negate the duty to defend eliminate any possibility that Allstate will ever have a duty to indemnify Mr. Rennick.  *See, e.g., Northfield Ins. Co. v.*

*Herrera*, 751 Fed. App'x. 512, 517 (5th Cir. 2018) (citing *Farmers Texas Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (per curium)); *LCS Corrections Services, Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 669 (5th Cir. 2015).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Allstate homeowners policy that is the subject of this action was issued to Richard and Mary Rennick in this District and each of the Defendants is a resident of this District.

## III.

### DECLARATORY JUDGMENT ACTION

7.      Allstate brings this declaratory judgment action under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 for the purpose of determining actual controversies between the parties, as described below.  The controversies exist as a result of the claims asserted in the case styled *Michael Shawn Cumberland and Sylvia Cumberland, Individually and as Representatives of the Estate of Nicholas Antonio Cumberland, Deceased v. Texas Cowboys, et al.*; Cause No. D-1-GN-20-002715; currently pending in the 261st Judicial District Court of Travis County, Texas (the "Underlying Lawsuit").

8.      Texas law applies because Allstate issued the homeowners policy to citizens and inhabitants of Texas, and Allstate is authorized to do and is doing business in Texas. *See Millis Dev. & Const., Inc. v. America First Lloyd's Ins. Co.*, 809 F.Supp.2d 616, 624 (S.D. Tex. Aug. 12, 2011).  "This is a diversity suit, so Texas law controls."  *State Farm Lloyds v. Richards*, 784 Fed. App'x. 247, 250 (5th Cir. 2019).   Under Texas law, the "complaint allegation rule" or the "eight corners rule" applies to determine whether a carrier has a duty to defend claims asserted against an insured.  *See, e.g., Star-Tex Resources, L.L.C.*

*v. Granite State Ins. Co.*, 553 Fed. App'x. 366, 369 (5th Cir. 2014); *Ace American Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839-40 (5th Cir. 2012).

9.      Allstate has no duty to defend or to indemnify an insured where it meets its burden to prove "that the plain language of a policy exclusion or limitation allows the insurer to avoid coverage of all claims, also within the confines of the eight-corners rule." *Star-Tex Resouces*, 533 Fed. App'x. at 369 (quoting *Northfield*, 363 at 528; *see also, e.g., Richards*, 784 Fed. App'x. at 251; *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). In other words, Allstate "does not have a duty to defend when the complaint makes allegations which, if proven, would place the plaintiff's claim within an exclusion from coverage." *Simco Enterprises, Ltd. v. James River Ins. Co.*, 566 F. Supp. 2d 555, 564 (E.D. Tex. 2008); *see also Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 644-45 (Tex. 2005) (holding that no duty to defend existed under homeowners policy where factual allegations triggered exclusion in that policy).

## IV.
## THE UNDERLYING ACTION

10.      The current pleading in the Underlying Lawsuit is Plaintiffs' First Amended Petition (the "Petition"). That pleading alleges that Mr. Rennick engaged in asserted improper hazing activities that led to sleep depravation of initiates at an event that was part of the initiation into Texas Cowboys, an organization affiliated with the University of Texas. (Petition ¶¶ 16, 24). The Cumberlands further allege that, after the hazing activities and associated physical abuse by Mr. Rennick and others, Nicky Cumberland and several friends began the return drive to Austin from the location of the event. (Petition ¶ 18).

11.     In their Petition, the Cumberlands describe the events that resulted in the death of Nicky Cumberland as follows:

> Nicky was a passenger in a GMC Canyon driven by fellow initiate, Blake Ryan Lindy.  Blake Ryan Lindy fell asleep at the wheel while traveling on Highway 183 and lost control of the vehicle which left the road and rolled.  Tragically, Nicky Cumberland sustained serious personal bodily injuries in that wreck which later resulted in his death.

(Petition ¶ 18).

12.     On that basis, the Cumberlands seek compensatory and punitive damages for the death of Nicky Cumberland resulting from this one-vehicle accident.  There are no allegations that Mr. Rennick was using the GMC Canyon driven by Mr. Lindy or occupied by Nicky Cumberland at the time of the motor vehicle accident.  As a result, no potential coverage exists under any personal auto policy.

**V.**
**THE ALLSTATE HOMEOWNERS POLICY**

13.     The homeowners policy that Allstate issued to Richard and Mary Rennick extends liability coverage to "an insured person."  The policy defines an "insured person" in relevant part to mean a named insured or a relative of a named insured but only if that relative also is a resident of the named insured's household.

14.     Connor Joseph Rennick is not a named insured.  However, as a student, Mr. Rennick continued to be a resident of his parents' household on the date of the motor vehicle accident that resulted in the death of Nicky Cumberland.  As a result, Mr. Rennick qualifies as an "insured person" in the first instance.

15.     However, Exclusion 5 of the Allstate homeowners policy eliminates liability insurance coverage for any "bodily injury or property damage arising out of the ownership,

maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." None of the eight listed exceptions to this exclusion revives coverage.

## VI.
### GROUNDS FOR DECLARATORY RELIEF

16.     Exclusion 5 eliminates liability coverage for the bodily injury claims against Mr. Rennick in the Underlying Lawsuit because those claims arise out of the "use" of "any" motor vehicle, here the GMC Canyon. Nicky Cumberland was "using" that vehicle as a passenger being transported on the return to campus at the time of the accident. *See Salinas v. Progressive County Mut. Ins. Co.*, 2017 WL 4399366, at *2 (Tex. App.—Amarillo Oct. 4, 2017, no pet.). Under the governing "complaint allegation rule," Allstate has no duty to defend Mr. Rennick under his parents' homeowners policy because the facts alleged in the Petition fall within an exclusion in the governing policy. *See Simco Enterprises*, 566 F.Supp.2d at 564; *Hallman*, 159 S.W.3d at 644-45.

17.     Under Texas law, "arising out of" is construed broadly to mean "there is simply a 'causal connection or relation,' ... which is interpreted to mean that there is but for causation, though not necessarily direct or proximate causation." *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (citing *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 156 (Tex. 1999)). Such a connection exists here because no claim in the Underlying Lawsuit for the death of Nicky Cumberland exists but for the use of the GMC Canyon. The requisite connection between the excluded event (the use of a vehicle) and the bodily injury claim in the Underlying Lawsuit exists for reasons similar to those in a decision enforcing a motor vehicle exclusion to preclude liability coverage in *Employers*

*Mutual Casualty Co. v. St. Paul Insurance Co.*, 154 S.W.3d 910 (Tex. App.—Dallas 2005, no pet.).

18.    The underlying lawsuit in *Employers Mutual* involved claims against a road construction contractor for injuries resulting when the claimant struck a subcontractor's supply truck/crash truck stopped in the road to divert traffic.  The governing exclusion applied only to bodily injuries "that result from" another insured's use of a vehicle, arguably narrower than the "arising from" language in the Allstate motor vehicle exclusion.  *See Utica National*, 141 S.W.3d at 203 (interpreting the phrase "due to" as narrower than the phrase "arising out of" to require "a more direct type of causation").  The claimant argued that the auto exclusion did not apply because the claim was for the insured contractor's "failure to use appropriate warning systems to safely guide the traffic around the work zone," not the operation or use of any vehicle.  154 S.W.3d at 914.  Despite these allegations of separate negligence on the part of the insured contractor, the Court concluded that the motor vehicle exclusion precluded coverage because the injury resulted from the vehicle use.  154 S.W.3d at 916.

19.    The Texas Supreme Court confirmed the broad construction of the phrase "arising out of" and the rather insignificant relationship needed between the vehicle use and the damages sought for the requisite causal connection in enforcing a similar motor vehicle exclusion in a CGL policy. *See Mid-Continent Cas. Co. v. Global Enercom Mgmt., Inc.*, 323 S.W.3d 151, 155 (Tex. 2010).  In the underlying tort lawsuit, the estates of three workers sued the insured when a rope attached on one end to the front bumper of a Ford F-250 truck and on the other end to a headache ball on which the workers were standing broke, causing the workers to fall to their deaths.  Concluding that the deaths "arose out of" the use of the

motor vehicle despite the argument that the broken rope was the cause of the injuries, not the use of the pickup, the Court explained that the deaths would not have occurred "but for" the use of the vehicle.  323 S.W.3d at 156.

20.     Enforcing the motor vehicle exclusion to negate liability coverage for Mr. Rennick is further mandated by the Fifth Circuit's decision in *Salcedo v. Evanston Ins. Co.*, 426 Fed. App'x. 487 (5th Cir. 2012).  The bodily injury claimant in that lawsuit was injured when a hose attached from the plant's asphalt reservoir to an oil truck ruptured while he was uploading oil from the truck to the reservoir, causing significant burn injuries.  The carrier denied liability coverage based on the motor vehicle exclusion in the CGL policy that eliminated coverage for a bodily injury arising out of the use of any vehicle.  Initially, the Fifth Circuit held that the unambiguous policy language "does not require that the insured do anything with the auto for the exclusion to apply," as the plain meaning of the policy language did not require any such activity.  426 Fed. App'x. at 489-90.

21.     Citing *Global Entercom*, the Court further held that the use of the oil truck contributed to the injury, triggering the exclusion.  426 Fed. App. at 490 (citing *Global Entercom*, 323 S.W.3d at 156).  Significantly, the Fifth Circuit commented that this broad motor vehicle exclusion was incorporated as a result of an endorsement that changed the original exclusion, which eliminated insurance coverage only for a bodily injury "arising out of the…use…of any…'auto'…*owned or operated by or rented or loaned to any insured*."  462 Fed. App'x. at 488 (emphasis supplied by Court).  Despite the broader endorsement language, the claimant argued that "the insured…must have been the one [using the truck] in order for the auto exclusion to apply."  462 F. App'x. at 489.

22.    In rejecting this argument and enforcing the exclusion, Court in *Salcedo* explained that:

> [T]he relevant terms of the policy are not ambiguous—they simply state that injuries arising from the use of an [sic] any auto…are excluded from coverage.  The policy does not require that the insured do anything with the auto for the exclusion to apply.  The policy thus must be accorded its plain meaning.

462 Fed. App'x. at 489-90 (citation omitted).  The Court also rejected the argument that "Texas law itself restricts policy exclusions to acts of the insured."  462 Fed. App'x. at 490. For precisely these same reasons, no liability coverage exists under the Allstate homeowners policy because the bodily injury claim in the Underlying Lawsuit arose out of the use of "any motor vehicle," even though the claim did not result from Mr. Rennick's use of any vehicle.

23.    Decisions from other jurisdictions agree that no insurance coverage exists under the broad motor vehicle exclusion in the Allstate homeowners policy.  An example is the decision of the Michigan Supreme Court in *Allstate Ins. Co. v. Keillor*, 537 N.W.2d 589 (Mich. 1995), involving a claim against a homeowner for serving alcohol at a party.  One of the inebriated guests at the party was later involved in an automobile collision.  The injured claimant argued that the exclusion was ambiguous as to whether it applied only to accidents resulting from the insured's use of a vehicle or, rather, to anyone's use of any vehicle.  The Court concluded that the exclusion was unambiguous and "plainly states that the homeowner's coverage does not extend to personal injury or property damage arising out of the use or operation of any motor vehicle."  537 N.W.2d at 420.  As in *Salcedo*, the Court contrasted the broad language of this exclusion with one considered in an earlier case that "included the words 'owned or operated by…any Insured'" after "motor vehicle."  537 N.W.2d at 420 n.5.  That language was "narrower…than the exclusion in this case because

this exclusion is not contingent on the ownership or use of the motor vehicle by an insured. It applies to any motor vehicle." *Id.*

24.    Other decisions support this construction of the broad language in this motor vehicle exclusion when utilizing the same precepts for construing unambiguous policy language as in Texas. *See, e.g., American Alternative Ins. Corp. v. Goodwill of the Olympics and Ranier Region*, 2020 WL 236759, at *3-*4 (W.D. Wash. Jan. 15, 2020) (enforcing "plain language" of similarly broad motor vehicle exclusion that "does not distinguish between injuries based on who owned or was in control of the automobile," as proposed qualification "does not exist in the explicit language of the exclusion"); *One Call Medical, Inc. v. National Fire & Marine Ins. Co.*, 401 F.Supp.3d 994, 1002-03 (E.D. Cal. 2019) (enforcing unambiguous motor vehicle exclusion that "is not limited to automobiles owned or operated by the insured"); *Allstate Property and Casualty Ins. Co. v. Filachek*, 2011 WL 2111219, at *4 (E.D. Pa. May 25, 2011) (exclusion applies even where insured did not own or use motor vehicle because coverage is excluded for any damage "arising out of anyone's use of a vehicle"); *Sauls v. Allstate Property & Cas. Ins. Co.*, 757 S.E.2d 455 (Ga. Ct. App. 2014) (enforcing homeowners exclusion because express terms included no "limitation as to the actor" who must be using the motor vehicle for the exclusion to apply); *Barber v. Lee*, 597 So.2d 1163, 1166 (La. Ct. App. 1992) (holding that the "argument that the motor vehicle being used must also be owned by the insured is clearly not supported by the language of [the] policy, which excludes coverage for accidents resulting from the use of *any* motor vehicle, whether owned or non-owned") (emphasis in original)).

25.    Citing *Sauls* and other decisions, the Ohio Court of Appeals also enforced the broad homeowners policy exclusion in a homeowners policy issued by a related Allstate

11

entity to deny any defense or indemnity obligation in *Allstate Insurance Co. v. Bowman*, 120 N.E.3d 1285 (Ohio Ct. App. 2018). That decision involved analogous facts, as the Allstate insured allegedly engaged in conduct at the insured's home that resulted in the impairment of a third party involved in a subsequent auto accident. Citing *Keillor* and decisions construing Allstate homeowners policies in Connecticut and Hawaii, the Court held that there was no duty to defend or to indemnify the homeowner insured because these decisions from other jurisdictions "have construed the same motor vehicle exclusion in a similar manner to bar coverage under a homeowner's policy" where the homeowner's conduct results in the impairment of a driver involved in an accident resulting in the bodily injury claims. 120 N.E.3d at 1291 (citations omitted). The Court held that the exclusion "is not ambiguous and must be enforced as written" to exclude coverage for bodily injury claims arising out of the use "of *any* motor vehicle." *Id.* (emphasis supplied by Court).

26. Earlier this year, the Court again enforced the same exclusion in precisely the same Allstate homeowners policy to deny coverage for an insured against claims for unreasonably endangering a claimant injured in a subsequent motor vehicle accident. *See Allstate Vehicle and Property Ins. Co. v. Scott*, 2020 WL 1557395 (N.D. N.Y. Mar. 31, 2020). Citing and relying on the decisions in *Keillor* and decisions from other jurisdictions, the Court concluded that, whether the insured had any connection to the vehicle "is irrelevant" in determining whether the exclusion bars coverage, as the exclusion "focuses on the connection between a vehicle and the injury, not between a vehicle and the insured." Sl. Op. at *6. Therefore, the Court enforced the same unambiguous exclusion to deny a defense and indemnity. Sl. Op. at *7.

27.     There is no duty to indemnify Mr. Rennick or to pay any policy benefits to the Cumberlands for precisely the same reason there is no duty to defend Mr. Bellow. *See Nutmeg Ins. Co. v. Clear Lake City Water Authority*, 229 F. Supp. 2d 668, 676 (S.D. Tex. 2002) (citing *Griffin*, 955 S.W.2d at 84).   No facts can be developed in the Underlying Lawsuit to support any claim that did not "arise out of" the use of "any" motor vehicle, warranting the declaratory relief requested.   *Herrera*, 751 Fed. App'x. at 517.

28.     The absence of any indemnification obligation is confirmed by the Fifth Circuit's decision in *Star-Tex Resources*.  After concluding that the auto exclusion applied to bar any duty to defend, the Court granted the carrier's motion for summary judgment and denied any separate contractual duty to indemnify.   553 Fed. App'x. at 373 (citation omitted).  Quoting from its earlier decision in *Northfield Ins. Co. v. Loving Home Care, Inc.*, which in turn quoted from the Texas Supreme Court's decision in *Griffin*, the Fifth Circuit in *Star-Tex Resources* ruled that generally "Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless '*the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*.'"  *Id.* (quoting *Northfield*, 363 F. 3d at 529, quoting *Griffin*, 955 S.W.2d at 84) (emphasis supplied by Court in *Northfield*).   Here, the same reasons that negate the duty to defend – the applicability of the motor vehicle exclusion – likewise eliminate any possibility that Allstate will ever have a duty to indemnify Mr. Rennick.  As a result, the motor vehicle exclusion also eliminates any duty to indemnify Mr. Rennick.

WHEREFORE, Plaintiff Allstate Vehicle and Property Insurance Company respectfully requests that Defendants be cited to appear and answer herein; that the Court thereafter enter a declaratory judgment determining that Allstate has no duty under the

Rennicks' homeowners policy to defend Mr. Rennick in the Underlying Lawsuit or to pay any policy proceeds to the Cumberlands for any damages they might be awarded in the Underlying Lawsuit; and that Allstate recover such other and further relief that the Court deems just and proper.

Respectfully submitted,

*/s/ Ronald J. Restrepo*
Ronald J. Restrepo
State Bar No. 16791300
Federal I.D. No. 920
rrestrepo@drhrlaw.com
**DOYLE, RESTREPO, HARVIN & ROBBINS, LLP**
440 Louisiana, Suite 2300
Houston, Texas 77002
(713) 228-5100 Telephone
(713) 228-6138 Facsimile
**ATTORNEY-IN-CHARGE FOR PLAINTIFF, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**